IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SHARON CALDWELL,                )
                                )
    Plaintiff,                  )
                                )
v.                              )      Civil Action No. 3:22-cv-636–HEH
                                )
NOTTOWAY COUNTY, *et al.*,      )
                                )
    Defendants.                 )

## MEMORANDUM OPINION
(Granting Defendants' Motions to Dismiss
and Dismissing Plaintiff's Complaint)

This matter is before the Court on Defendants'[1] Motions to Dismiss (ECF Nos. 72, 80, 82, 84), filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Sharon Caldwell ("Plaintiff" or "Caldwell") filed her Second Amended Complaint on March 8, 2023, alleging violations of both state and federal law. She alleges that the Nottoway County Electoral Board (the "Board"), its members (the "Board members"), and interim General Registrar Zachary Baldwin ("Baldwin") unlawfully terminated her as Officer of Election and Assistant Registrar of Nottoway County. Plaintiff's Second Amended Complaint specifically alleges violations of the United States Constitution ("U.S. Constitution") as well as violations of Virginia statutory law,

---

[1] Defendants include: Nottoway County; Nottoway County Board of Supervisors; the Nottoway County Electoral Board; Nottoway County Electoral Board members: Sarah Allen, Mae Tucker, Christopher Page, Thomas Reynolds, and April Wright; Interim General Registrar Zachary Baldwin; current General Registrar Rodney Reynolds; and John Roark. (Second Am. Compl. at 3–4, ECF No. 69.)

tort law, and her Virginia Constitutional rights. (Second Am. Compl. ¶¶ 62–185.)

The parties have submitted extensive memoranda detailing their respective positions, and oral argument was heard on May 16, 2023. For the following reasons, the Eleventh Amendment bars Plaintiff's U.S. Constitutional claims and thus, does not establish the requisite federal question jurisdiction of this Court. Therefore, Defendants' Motions to Dismiss will be granted as to Counts VI, VIII, X, and XIV. The Court will not exercise supplemental jurisdiction over the remaining state law claims and will dismiss Plaintiff's Second Amended Complaint.

## I. BACKGROUND

Caldwell served 20 years in the General Registrar's Office for Nottoway County. (Second Am. Compl. at 2.) She spent her first 16 years as the Officer of Election, and, for the last two years, also served as Assistant Registrar under then General Registrar Angela Stewart ("Stewart"). (*Id.*) On September 24, 2021, the Board and interim General Registrar Zachary Baldwin ("Baldwin") terminated Caldwell's appointments as Officer of Election and Assistant Registrar. (*Id.*) She alleges these terminations were unlawful and seeks reinstatement as well as monetary damages. (*Id.*)

### A. Administration of Elections in Virginia

Federal, state, and local elections in Virginia are administered by a hierarchy of state entities and officials, consisting of the State Board of Elections (the "State Board"), local electoral boards, general registrars, deputy or assistant registrars, and officers of election. *See* Va. Code § 24.2-101. The State Board, through the Department of Elections, supervises and coordinates the work of the "county and city electoral boards

and of the registrars to obtain uniformity in their practices and proceedings . . . ." *Id.* § 24.2-103; *see also Mr. Charles W. Haney and Ms. Mary G. Turner*, Op. No. 19-053, 2020 WL 1058331, at *3 n.7 (Va. A.G. Feb. 28, 2020) ("Both the registrar and the local electoral board remain subject to the ultimate oversight of the State Board . . . ."). Virginia Code § 24.2-106 outlines that each county and city in Virginia shall have an electoral board composed of three members, who shall be appointed by the chief judge of the judicial circuit.

Each local electoral board appoints officers of election, Va. Code § 24.2-115, "who serve at a polling place for any election," *id.* § 24.2-101. Officers of election serve terms "at the discretion of the [local] electoral board, for a term not to exceed three years or until their successors are appointed." *Id.* § 24.2-115. Officers are paid by the locality for the work on each election day, however, they may waive compensation and serve as a volunteer. *Id.* § 24.2-116. An individual may serve as both an assistant registrar and an officer of election. *Id.* § 24.2-112. Additionally, as was in place at the time of the alleged unlawful conduct, "[t]he electoral board by a recorded majority vote may remove from office, on notice, any general registrar or officer of election who fails to discharge the duties of his office according to law." Va. Code § 24.2-109(A) (2020).[2]

---

[2] The Court notes that on March 22, 2023, the General Assembly amended and reenacted Virginia Code §§ 24.2-103, -109, -234, and -235. In addition, the General Assembly added § 24.2-234.1, which institutes a new procedure for removing members of local electoral boards and general registrars. There was no explicit retroactivity provision included in the passage of the new amendments. Thus, the new amendments have no effect on the case at hand and the Court must interpret the statute at the time the alleged unlawful conduct occurred. *See Virginia Elec. and Power Co. v. State Corp. Comm'n*, 861 S.E.2d 47, 54 (Va. 2021) ("Rights accrued under the former law before the passage of an amended statute will not be affected by the amendment, but will be governed by the original statute, unless a contrary intention is expressed

3

General registrars may appoint assistant registrars—also referred to as deputy registrars—to assist them with their duties. *Mr. Geralde W. Morgan, Mr. Arthur D. Roane, Ms. Laverne B. Adams*, Op. No. 14-046, 2014 WL 5406303, at *1 (Va. A.G. Oct 1, 2014); *see* Va. Code § 24.2-112. General registrars also have the authority to remove a deputy registrar who fails to discharge her duties. Va. Code § 24.2-112. However, local electoral boards "determine the number of deputy registrars to serve in the office of the general registrar, including any to serve full-time." *Id.* Local electoral boards also set the terms for deputy registrars to serve, but such terms cannot exceed the general registrar's term length. *Id.*

## B. Caldwell's Termination as Officer of Election and Deputy Registrar

Relevant to this action, the Board re-appointed Stewart as General Registrar of Nottoway County commencing on July 1, 2019. (Second Am. Compl. ¶ 17.) The Court assumes Stewart appointed Caldwell to serve as the Deputy Registrar.[3] Beginning in 2021, the Board's members were comprised of—Ms. Sarah Allen ("Allen"), Ms. Mae Tucker ("Tucker"), and Christopher Page ("Page"). (*Id.* ¶¶ 8–10.)

On September 23, 2021, the Board allegedly met in closed session with its legal counsel to discuss personnel matters involving staff of the General Registrar's Office.[4]

---

in a latter statute." (cleaned up)). Therefore, all references herein are to the Virginia Code provisions active at the time of Defendants' alleged unlawful conduct.

[3] The Second Amended Complaint does not allege how Caldwell was appointed to her positions.

[4] Caldwell alleges that the Board conducted the meeting first, then only after convening the meeting did the Board amend the agenda to insert that it was a closed session. (Second Am. Compl. ¶ 29.)

4

(*Id.* ¶ 32.) Caldwell contends that this meeting was in violation of Virginia Code § 2.2-3707(F)[5] because the Board did not "include as an item of business that [the Board] would consider terminating Ms. Caldwell's appointment." (*Id.* ¶ 31.) Additionally, Defendant John Roark ("Roark"), who was not a Board member, was also allegedly present at the meeting. (*Id.* ¶ 35.) Caldwell asserts that the Board members voted to remove Caldwell as Officer of Election due, "at least in part," on information provided by Roark. (*Id.* ¶ 37.) Specifically, Caldwell claims that Roark complained to the Board members that Caldwell stated "'she would never vote for [him] again' . . . if Roark were to run again for the Nottoway County Board of Supervisors." (*Id.* ¶ 38.)

Plaintiff alleges that the meeting reconvened again the following day, September 24. (*Id.* ¶ 26.) At that time, Allen moved "under § 24.2-109 to remove from office [Caldwell] as an officer of election to whom proper notice was given,[6] for her

---

[5] Virginia Code § 2.2-3707(F) states:

> At least one copy of the proposed agenda and all agenda packets and, unless exempt, all materials furnished to members of a public body for a meeting shall be made available for public inspection at the same time such documents are furnished to the members of the public body. The proposed agendas for meetings of state public bodies where at least one member has been appointed by the Governor shall state whether or not public comment will be received at the meeting and, if so, the approximate point during the meeting when public comment will be received.

[6] Caldwell alleges that proper notice was never provided to her. (Second Am. Compl. ¶ 39.) However, Defendants contend that written notice by electronic mail was provided to Caldwell during the September 23 meeting, outlining that the Board was considering her removal as an officer of election. (Defs.' Mem. in Supp. at 5, ECF No. 83.) The notice allegedly notified Caldwell that on September 24, when the meeting reconvened, she would have 30 minutes to address the Board's considerations and that she could file a written response. (*Id.*) The Court assumes all well-pleaded allegations in the Complaint as true and will assume that Caldwell did not receive adequate notice. However, as will be articulated in more detail below, this fact does not change the Court's analysis.

5

failure to discharge the duties of her office according to law, effective immediately." (*Id.* ¶ 26.) Tucker seconded the motion, and Allen, Tucker, and Page voted for and unanimously passed the motion. (*Id.* ¶¶ 27–28.) The Board thereby removed Caldwell as Officer of Election. (*Id.* ¶ 29.)

At the same meeting, the Board also removed Stewart as General Registrar. (*Id.* ¶ 13.) Subsequently, the Board appointed Baldwin to serve as the interim General Registrar, and Plaintiff alleges that the Board encouraged Baldwin to unlawfully terminate her as Deputy Registrar. (*Id.*) He served in an interim capacity until approximately December 7, 2021, when the Board appointed Rodney Reynolds ("Reynolds") as General Registrar. (*Id.* ¶ 14.) Reynolds still currently remains General Registrar. (*Id.*)

## II.   LEGAL STANDARDS

As previously mentioned, this matter is before the Court on Defendants' Motions to Dismiss for failure to state a claim and for lack of jurisdiction. Because Defendants' Motions under Rule 12(b)(1) have jurisdictional implications, the Court must initially address their challenges to this Court's subject matter jurisdiction.

To clarify, Plaintiff's Second Amended Complaint contains fourteen (14) total counts. Counts VI, VIII, X, and XIV allege violations of the U.S. Constitution, forming the basis for this Court's federal question jurisdiction.[7] (Second Am. Compl. ¶¶ 104–85.)

---

[7] Diversity jurisdiction under 28 U.S.C. § 1332 is inapplicable because all entities and persons involved in this matter are Virginia citizens. Therefore, complete diversity does not exist between the parties.

6

The remaining ten (10) counts contain allegations of violations solely under Virginia law. The Court will address Plaintiff's federal claims first to determine if jurisdiction over this matter is appropriate.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They possess only such power as is authorized by the Constitution or conferred by statute. *Id.* "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). Accordingly, Rule 12(b)(1) allows a defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action.

Defendants may challenge subject matter jurisdiction on a 12(b)(1) motion in one of two ways. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). First, the defendant may "contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* (citation and internal quotation marks omitted). In that case, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* Second, a defendant can argue "that the jurisdictional allegations of the complaint are not true." *Id.* Under such a scenario, courts can consider evidence beyond the pleadings. *Id.*; *see also White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005). Under either circumstance, plaintiffs carry the burden of proving subject matter

7

jurisdiction. *Piney Run Pres. Ass'n v. Cty. Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008). Here, the Board, the Board members, Baldwin, Reynolds, Nottoway County, and the Nottoway County Board of Supervisors challenge the Court's subject matter jurisdiction under the first method and assert that the Eleventh Amendment bars all claims against them.[8]

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. The Supreme Court has interpreted this Amendment to bar private individuals from suing a state in federal court. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 363 (2001). By extension, the Eleventh Amendment prohibits "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v.*

---

[8] Plaintiff does not specifically allege her U.S. Constitutional claims against Nottoway County or the Nottoway County Board of Supervisors. She simply alleges that "[f]or purposes of 42 U.S.C. § 1983, the actions of [the Board] . . . constitute a custom and/or practice of Nottoway County and/or the Nottoway County Board of Supervisors . . . ." (Second Am. Compl. ¶ 60.) Additionally, under each U.S. Constitutional claim, she includes specific provisions seeking injunctive relief and monetary damages against Nottoway County and the Nottoway County Board of Supervisors. (*See, e.g., id.* ¶¶ 110, 128, 147, 184.)
First, a county acts only through its Board of Supervisors, making the Nottoway County Board of Supervisors the only properly named defendant. *See* Va. Code § 15.2-402; *see also Eberhardt v. Fairfax Cnty. Empl. Ret. Sys. Bd. of Trs.*, No. 1:10-cv-771, 2012 WL 1080926, at *9 n.4 (E.D. Va. Mar. 30, 2012). Second, Plaintiff has provided no facts as to the County's or the Board of Supervisor's alleged unlawful behavior and mere legal and conclusory statements will not suffice to state a claim against them. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that courts are not bound to accept as true legal conclusions couched as a factual assertion). Therefore, the Court finds that no plausible claim has been pled against Nottoway County or the Nottoway County Board of Supervisors and will only address Plaintiff's constitutional claims against the Electoral Board and its members.

*Doe*, 519 U.S. 425, 429 (1997).

## III. DISCUSSION

### A. Claims Against the Nottoway County Electoral Board

In Virginia, a local electoral board is considered a state entity for Eleventh Amendment purposes. *Stokes v. Hopewell Electoral Bd.*, No. 3:19CV469-HEH, 2020 WL 591408, at *2 (E.D. Va. Feb. 6, 2020); *see also McConnell v. Adams*, 829 F.2d 1319, 1328 (4th Cir. 1987) (holding that "electoral boards . . . are dominated by the state"). Although Plaintiff's Second Amended Complaint alleges U.S. Constitutional violations under § 1983, "§ 1983 does not abrogate eleventh amendment immunity." *McConnell*, 829 F.2d at 1328. Additionally, the Supreme Court has clarified that state entities are not considered "persons" capable of being sued under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983").

Plaintiff argues that the Eleventh Amendment does not bar the claims against the Board because "the Electoral Board is not subject to the Eleventh Amendment[.]" (Pl.'s Mem. in Supp. at 5, ECF No. 113 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).) However, the reasons articulated in *Doyle* contravene Plaintiff's position, and her mere labeling of the Board as a municipality does not abrogate its sovereign immunity. *Doyle* articulates that the issue of whether the Board "is to be treated as an arm of the State" and protected by Eleventh Amendment immunity or "instead to be treated as a municipality" to which no immunity applies, "turns upon the nature of the entity created by state law." *Doyle*, 429 U.S. at 280. Thus, if the Court

9

determines that the record indicates the Board is more like an arm of the state than it is like a municipality, it may assert Eleventh Amendment immunity. *See id.*

Here, it is clear that local electoral boards are more like an arm of the state than they are like municipalities. Local electoral boards derive all their power and responsibilities from Virginia statutory law. They are subject to the State Board's supervision and authority, which includes the power to initiate removal proceedings against local electoral board members. Va. Code §§ 24.2-106.01 and -103. Electoral board members are appointed by state circuit court judges. *Id.* § 24.2-106. The party affiliation of board members depends upon the party affiliation of the governor, not the party in power locally. *Id.* Although the counties pay the local electoral board members' salaries initially, the members' compensation is set by Virginia's General Appropriations Act and their salaries and other expenses are reimbursed annually from the state treasury. *Id.* § 24.2-108. Electoral boards must also maintain uniform statewide practices and proceedings. *Id.* § 24.2-103.

In sum, localities "have no measurable control over the appointment, discharge, compensation, duties, or policies of the electoral boards. These are matters of state concern entrusted to state agencies." *McConnell*, 826 F.2d at 1327. Therefore, this Court concludes that the Board is an arm of the state for purposes of Eleventh Amendment immunity. Accordingly, Plaintiff's Counts VI, VIII, X, and XIV against the Board are barred by sovereign immunity.

**B. Claims Against the Electoral Board Members**

In addition to bringing constitutional claims against the Board, Plaintiff also

10

pleads those same claims against the Board members—namely, Allen, Tucker, Page, April Wright ("Wright"), and Thomas Reynolds ("Thomas").[9]

The Eleventh Amendment bars "not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal.*, 519 U.S. at 429. Thus, the Amendment bars "suits seeking civil damages against state officers in their official capacity." *Davison v. Plowman*, 247 F. Supp. 3d 767, 780 (E.D. Va. 2017).

Courts generally distinguish between suits against government officials in their "official-capacity" and suits against them in their "personal-capacity." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Official-capacity suits are akin to "pleading an action against an entity of which an officer is an agent." *Id.* (citation omitted). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

i. Official-Capacity Claims Against the Board Members

As Defendants correctly point out, Plaintiff cannot maintain her official capacity claims against individuals no longer serving as a government official. *See, e.g., Wilson v. United States*, 332 F.R.D. 505, 528 (S.D.W. Va. 2019); *Grate v. South Carolina*, No. CV 3:18-00895-JFA, 2019 WL 13112818, at *2 (D.S.C. Sept. 24, 2019). That is because official-capacity suits are really suits against the holder of the office. *See Hafer*, 502 U.S.

---

[9] Tucker and Page are no longer members of the Board. (Defs.' Mem. in Supp. at 9.) Allen, Wright, and Thomas are the current members of the Board; however, Plaintiff asserts that Wright and Thomas are named in their "official capacity and for injunctive relief only." (Second Am. Compl. at 1.)

11

at 25. Thus, because Tucker and Page no longer serve as Board members and Baldwin no longer serves as interim General Registrar, Plaintiff cannot maintain an official-capacity claim against them.

Eleventh Amendment immunity applies to "[s]tate officers acting in their official capacity," because such a suit "is not a suit against the official but rather is a suit against the official's office." *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (quoting *Will*, 491 U.S. at 71). As previously mentioned, local electoral board members "are considered state employees for the purposes of the Eleventh Amendment." *Stokes*, 2020 WL 591408, at *2 (citing *McConnell*, 829 F.2d at 1327–28). Because the Board is considered a state entity and its employees are state employees, the Eleventh Amendment bars any official-capacity claims against Allen, Wright, or Thomas for retrospective, monetary relief.[10]

To the extent that Plaintiff brings an official-capacity claim against Reynolds, as the current General Registrar, the Second Amended Complaint only mentions Reynolds in its prayer for relief. (*See* Second Am. Compl. ¶ 14.) Otherwise, it fails to allege that Reynolds committed any liable act in either his official or personal capacity. Thus, although the Eleventh Amendment bars any official-capacity claim for damages against Reynolds, Plaintiff has failed to plead any cause of action against Reynolds.

ii. Personal-Capacity Claims against Board Members

In addition to the official-capacity claims, Plaintiff also pleads personal-capacity

---

[10] The Court will address Plaintiff's *Ex parte Young* injunctive relief claims below. *See infra* Section III.B.iii.

claims against Allen, Tucker, Page, and Baldwin. Whether a plaintiff has named a defendant in his official or personal capacity is generally determined by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.*, 126 F.3d 589, 609 (4th Cir. 1997); *Francis v. Woody*, No. 3:09-cv-325, 2009 WL 1442015, at *4–5 (E.D. Va. May 22, 2009). However, the Supreme Court has cautioned that "allowing an action to proceed simply because the complaint names a state official in his or her individual capacity 'would be to adhere to an empty formalism'" and "undermine the principle . . . that Eleventh Amendment immunity represents." *Martin v. Wood*, 772 F.3d 192, 195 (4th Cir. 2014). To hold otherwise would make the Eleventh Amendment subservient to "elementary mechanics of captions and pleadings." *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir 2001), *overruled in part on other grounds by Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721 (2003).

The Fourth Circuit has held that personal-capacity claims should be construed as official-capacity claims when the state officials are nominal defendants and the state is the "real, substantial party in interest." *Martin*, 772 F.3d at 196 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). To determine if the state is the "real, substantial party in interest" courts must examine the following factors:

> (1) were the allegedly unlawful actions of the state officials tied inextricably to their official duties; (2) if the state officials had authorized the desired relief at the outset, would the burden have been borne by the State; (3) would a judgment against the state officials be institutional and official in character, such that it would operate against the State; (4) were the actions of the state officials taken to further personal interests distinct from the State's interests; and (5) were the state officials' actions *ultra vires*.

*Id.* at 196 (cleaned up).

Local electoral boards and their members are considered arms of the state because they "bear a closer nexus with the state than with the localities where they work." *McConnell*, 829 F.2d at 1327. For the following reasons, the Court concludes that Plaintiff's personal-capacity claims against the Board members and Baldwin should be construed as official-capacity claims.

First, the Board members' and Baldwin's allegedly unlawful actions were tied inextricably to their official duties. Plaintiff complains that they unlawfully terminated her as Officer of Election and Deputy Registrar. Such actions are inextricably tied to their official duties and enumerated responsibilities provided under Virginia statutory law. Furthermore, it was the Board who terminated Plaintiff, not any individual Board member. The Board members individually do not have the authority to terminate or remove officers of election. That authority is only vested in the Board, acting through a majority vote of its members. *See id.* § 24.2-109. Moreover, general registrars are expressly vested with authority to appoint or remove deputy registrars. *Id.* § 24.2-112. Therefore, Plaintiff's claim that she was unlawfully removed from her appointments is inextricably tied to their official duties as state officers.

Second, the Board would have borne the burden of relief had it decided to reinstate Plaintiff. Virginia Code §§ 24.2-109, -112, and -115 outline that electoral boards have the authority to appoint and remove officers of election and determine the number of deputy registrars. Thus, it is the state that bears the responsibility to appoint, terminate, and pay officers of election, not the individual Board members. In addition,

14

Baldwin no longer has authority to appoint Plaintiff as deputy registrar because he no longer serves as interim General Registrar.

Third, any judgment in Plaintiff's favor would be against the state. As mentioned above, it is the Board that determines the scope of the hiring of deputy registrars and officers of election. Thus, any judgment would direct the Board, a state entity, to perform the requested relief. This directly contravenes the principle that the Eleventh Amendment serves.

Fourth, although Plaintiff does not expressly allege under her U.S. Constitutional claims that the Board members' actions were motivated by personal interests, she does allege a retaliatory motive under her First Amendment claim in Count X. Nonetheless, even construing this factor in Plaintiff's favor, when all of the factors are considered in their totality, they still support that the state is the real, substantial party in interest.

Lastly, the Board members' or Baldwin's alleged unlawful actions were not *ultra vires*. For an act to be *ultra vires*, a government official must lack *any* authority to perform the act—the official must act entirely "beyond the scope of his statutory authority." *Dillon by Dillon v. Dir., Dep't of Corr.*, 552 F. Supp. 30, 33 (W.D. Va. 1982). "An ultra vires claim rests on the officer's lack of delegated power." *Scott v. Virginia Port Auth.*, No. 2:17cv176, 2018 WL 3232825, at *13 (E.D. Va. Feb. 7, 2018). A plaintiff claiming that the official acted in error in the exercise of their state-delegated power is insufficient to show that the act was *ultra vires*. "[A]n officer might make errors and still be acting within the scope of his authority." *Halderman*, 465 U.S. at 112 n.22 (1984) (internal quotation omitted).

15

It is indisputable that the Board and the General Registrar had the authority to remove Plaintiff from her appointments. *See* Va. Code § 24.2-109 (granting local electoral boards authority to remove officer of election); *see also* Va. Code § 24.2-112 (granting general registrars authority to remove deputy registrars who fail to discharge their duties). Plaintiff's claim is simply that she did not fail at discharging her duties, and as such, the Board members or Baldwin did not have the authority to remove her. Whether Plaintiff discharged her duties is not relevant to determining whether the Board members' or Baldwin's actions were *ultra vires*. They clearly had the statutory authority to remove Plaintiff and her disagreement about the exercise of that authority does not make their actions *ultra vires*.

Accordingly, because the *Martin* factors weigh in favor of concluding that the state is the real, substantial party in interest, all of Plaintiff's personal-capacity claims will be construed as official-capacity claims. As such, the Eleventh Amendment bars any civil suit for damages against the Board members as well as Baldwin.

### iii. Official-Capacity Claims Against the Board Members and Reynolds for Injunctive Relief

In *Ex parte Young*, the Supreme Court carved out a limited exception to Eleventh Amendment immunity. 209 U.S. 123, 168 (1908). This exception applies to claims against state officials sued in their official capacity, but only where the plaintiff seeks "prospective, injunctive relief against a state officer to prevent ongoing violations of federal law." *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (citing *Ex parte Young*, 209 U.S. at 159–60).

16

As a threshold matter, the *Ex parte Young* exception does not apply to state entities such as the Board itself. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Alabama v. Pugh*, 438 U.S. 781 (1978) (per curiam); *Libertarian Party of Va. v. Virginia State Bd. of Elections*, No. 1:10-cv-615 LMB/TCB, 2010 WL 3732012, at *5 (E.D. Va. Sept. 16, 2010), *aff'd sub nom.* 434 F. App'x 174 (4th Cir. 2011). As this Court previously pointed out, "[the] *Ex parte Young* doctrine only allows suit for injunctive or declaratory relief against individual officers or officials of a state or local government, not against a state or state agencies." *Libertarian Party of Va.*, 2010 WL 3732012, at *5.

First, the *Ex parte Young* exception only applies to prospective, injunctive relief for ongoing violations of *federal law*. *See Ex parte Young*, 209 U.S. at 123. As such, the *Ex parte Young* doctrine does not support "a court's grant of any type of relief, whether retrospective or prospective, based upon a State official's violation of State law." *Bragg v. West Virginia Coal Ass'n*, 248 F.3d 275, 292–93 (4th Cir. 2001) (citing *Halderman*, 465 U.S. at 106). Therefore, Plaintiff cannot establish an *Ex parte Young* claim for the alleged violations of Virginia statutory and constitutional law. Plaintiff argues that she may seek an *Ex parte Young* claim under "a theory that the Defendants 'acted beyond the scope of [their] statutory authority'" which is not barred by the Eleventh Amendment. (Pl.'s Mem. in Supp. at 7.) However, the scope of their statutory authority is defined by Virginia statutory law, not federal law. Therefore, her claim rests on violations of state law and cannot support an *Ex parte Young* claim.

Second, the exception only applies to prospective relief. Here, Plaintiff seeks back

17

pay and benefits, compensatory damages, and punitive damages. (*See* Second Am. Compl. ¶¶ 110–112, 128–30, 147–49, 183–85.) Back pay and benefits, compensatory damages, and punitive damages are all retrospective, monetary relief and barred under *Ex parte Young* doctrine. *See Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747–48 (4th Cir. 2018); *see also Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (finding that punitive damages are retrospective, not prospective).

Lastly, the *Ex parte Young* exception also does not apply against the individual Board members. Because the authority to reinstate Plaintiff does not lie with the individual members, as none of them can unilaterally reinstate Plaintiff, that action would be taken by the Board itself, acting through a majority of its members. Thus, Plaintiff cannot allege that the individual Board members are committing ongoing violations of federal law. Moreover, because Baldwin no longer serves as General Registrar, Plaintiff cannot maintain an *Ex parte Young* claim against him in his official capacity. In regard to any *Ex parte Young* claim against Reynolds, Plaintiff has alleged no unlawful actions by Reynolds and has merely included him for purposes of relief. This is insufficient to maintain an *Ex parte Young* claim against him.

In sum, the Eleventh Amendment bars Plaintiff's suit against the Board, against the current and former individual Board members in their official and personal capacities, and against Baldwin in his official and personal capacity. Accordingly, Defendants' Motions to Dismiss for lack of jurisdiction and failure to state a claim will be granted as to Counts VI, VIII, X, and XIV, and they will be dismissed with prejudice.

## IV. CONCLUSION

Because the Eleventh Amendment bars Plaintiff's U.S. Constitutional claims, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 72, 82). Counts VI, VIII, X, and XIV will be dismissed with prejudice. Because these claims formed the basis for this Court's federal question jurisdiction and will be dismissed, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Accordingly, the Court makes no determination as to the merits of the remaining claims and will dismiss them without prejudice. As such, Defendants' remaining Motions to Dismiss (ECF Nos. 80, 84) will be denied.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: July 28, 2023
Richmond, VA